OPINION OF THE COURT
 

 Graffeo, J.
 

 CPL 540.10 mandates that the People take action to enforce a bail bond forfeiture order within a specified period of time. In this appeal we must determine when that time period begins to run. Because we hold that the time requirement is triggered when Supreme Court finds that a defendant’s absence is unexcused and makes a determination on the record directing
 
 *26
 
 forfeiture of the bail bond, we affirm the order of the Appellate Division that directed enforcement of the forfeiture order.
 

 Defendant Pete Nicholas was charged in a July 1996 indictment with murder in the second degree. At his arraignment, bail was set at $100,000 cash or secured bond. Defendant was released from custody in December 1996 after appellant International Fidelity Insurance Company posted a bail bond secured by real property owned by Russell Carbone, a friend of defendant’s family.
 

 In August 1997, defendant appeared in Monroe County Supreme Court with his attorney. The court informed defendant that the trial would commence on October 14, 1997 and, pursuant to
 
 People v Parker
 
 (57 NY2d 136, 141), warned him that the trial would proceed in his absence if he failed to appear on that date. He again accompanied his attorney to court on October 9, five days before the trial date, at which time his attorney moved to withdraw from the case due to defendant’s failure to honor their fee agreement. Supreme Court denied the motion and directed that the trial would proceed as scheduled.
 

 Defendant did not appear on October 14, the date the jury trial was scheduled to begin. Defense counsel requested that the court delay the issuance of a bench warrant, suggesting as one explanation for the non-appearance that defendant may merely be exercising his right not to be present at trial. The People noted that defendant had been given
 
 Parker
 
 warnings and asked that the trial proceed in defendant’s absence. The court adjourned the proceedings to allow the parties to attempt to locate defendant, which efforts were unsuccessful. When court reconvened later that day, the court issued a bench warrant and directed the parties to proceed with voir dire. The People sought an order forfeiting the bail bond but Supreme Court denied this request, indicating it needed additional information. The trial proceeded in defendant’s absence and he was convicted of murder in the second degree on October 23, 1997. During the proceedings, the court rejected the People’s repeated applications for a forfeiture order.
 

 Sentencing was scheduled for November 6. On that day, defendant’s attorney appeared with Russell Carbone, whose real property was pledged as security for defendant’s bail bond. The People asserted that a substantial period of time had elapsed since defendant’s initial non-appearance, that he remained at large despite extensive efforts by law enforcement
 
 *27
 
 to locate him, and that forfeiture was clearly warranted. Nonetheless, Supreme Court refused to direct forfeiture of the bond. Instead, at defense counsel’s request, the sentencing was adjourned to provide Carbone an opportunity to further address bail forfeiture issues. Carbone then sent a letter to the court detailing his efforts to cooperate with authorities in their attempts to apprehend defendant and seeking an “indefinite stay” of the forfeiture proceedings.
 

 On November 20, Supreme Court sentenced defendant in absentia to an indeterminate term of 25 years to life in prison. At that time, the court made a finding that defendant remained unavailable and that his absence was unexcused. The prosecutor stated that he would submit a bail bond forfeiture order and the court indicated it would sign the order but might impose conditions on its enforcement. Defendant was arrested in New York City nine days later and charged with a new felony offense. When he was returned to Rochester, he claimed that he did not appear for trial because he owed his attorney money and believed he would not receive adequate representation.
 

 Supreme Court signed the bail forfeiture order on January 12, 1998 but stayed its enforcement pending further motion of the District Attorney’s office. The next day, the order was filed in the County Clerk’s office. The People subsequently made a motion to vacate the stay. In opposition, Fidelity argued that the order was unenforceable because the People had failed to timely file it under CPL 540.10 (2), which then required that such an order be filed within 60 days. Fidelity asserted that the statutory time period must be measured from October 14, 1997, the date of defendant’s first non-appearance, and therefore the District Attorney did not timely file the order. The People countered that the January 13, 1998 filing was timely because the period did not begin to run until at least November 20, 1997, when the court first declared that defendant’s absence was unexcused.
 

 Supreme Court denied the People’s motion to lift the stay, concluding that it was compelled under CPL 540.10 to rule that bail was forfeited by operation of law on October 14, 1997, the date of defendant’s first non-appearance. As the People did not file a forfeiture order until January 13, 1998, the court ruled that the filing was untimely and the order unenforceable. The Appellate Division reversed and granted the motion to vacate the stay of enforcement. A majority of the court held that the filing period was not triggered until the date the court
 
 *28
 
 entered a finding on the record that defendant’s absence was unexcused and, as such, the People timely filed the forfeiture order. One Justice dissented, adopting Supreme Court’s view that bail was forfeited by operation of law on the date defendant first failed to appear. This Court granted leave to appeal and we now affirm.
 

 The procedure governing forfeiture of a bail bond appears in CPL 540.10. Subdivision (1) provides that when a defendant fails to appear at a scheduled court appearance without sufficient excuse, the court must enter “such facts” on the record and “the bail bond or the cash bail, as the case may be, is thereupon forfeited.” Under subdivision (2), the forfeiture may be discharged if defendant appears at any time before final adjournment with a satisfactory excuse for the non-appearance. If the forfeiture is not discharged, however, the District Attorney must file the bail bond and forfeiture order in the County Clerk’s office within a specified period of time “after the adjournment of the court at which such bond was directed to be forfeited.” At the time of the events at issue in this case, the statutory time period was 60 days. In 1998, the Legislature amended CPL 540.10 (2) to extend the time period to 120 days
 
 (see,
 
 L 1998, ch 427).
 

 In order to obtain remission or vacatur of a forfeiture order, a surety must follow the procedure set forth in CPL 540.30. An application seeking such relief “must be made within one year after the forfeiture of the bail is declared” and may be granted “upon such terms as are just,” provided the costs and expenses incurred in any forfeiture enforcement proceedings have been paid (CPL 540.30 [2]).
 

 Under this statutory scheme, the People are obligated to act expeditiously in enforcing any bail bond forfeiture order, as must a surety seeking remission of such an order. By the plain language of these statutes, both time requirements begin to run when the court “directs” or “declares” forfeiture of the bail bond — indicating forfeiture does not occur automatically but requires judicial action. This language contradicts Fidelity’s argument that the People’s time to enforce a forfeiture order begins to run, by operation of law, when a defendant first fails to appear at a scheduled court appearance.
 

 Although we have never addressed the precise issue raised here, this conclusion is consistent with our prior holdings. In
 
 People v Schonfeld
 
 (74 NY2d 324), we held that a District Attorney’s failure to timely file a forfeiture order precluded
 
 *29
 
 enforcement of that order. There, when defendant did not appear on a scheduled court date, the court noted his absence on the record and directed forfeiture of the bail bond. The court signed a formal forfeiture order four days later but the People failed to file that order for more than five months, notwithstanding the 60-day filing requirement then set forth in CPL 540.10 (2). Rejecting the People’s argument that the time requirement was merely directory, we gave effect to the statute’s mandatory language, observing that “the Legislature ha[d] opted to effectuate its over-all punitive goal, in part, by eliminating any discretion that the District Attorney’s office might otherwise have and directing it to take the required steps to enforce the court’s forfeiture order within a prescribed time frame”
 
 (id.,
 
 at 329). Thus, in
 
 Schonfeld,
 
 we noted that the purpose of the timely filing requirement was to mandate expeditious enforcement of a court order — an observation which supports our holding that the time period is not triggered until a court directs forfeiture of the bail bond.
 

 Our century-old decision in
 
 People v Bennett
 
 (136 NY 482) does not lead to a contrary result.
 
 Bennett
 
 involved an interpretation of section 593 of the Code of Criminal Procedure, a precursor to CPL 540.10. When defendant in that case failed to appear at a scheduled hearing, the court entered that fact in its records and directed that a formal order forfeiting the bail bond be filed in the County Clerk’s office. Eleven days later, after the surety had apprehended and surrendered defendant to the court, the court entered a formal order directing forfeiture. The surety moved for remission, claiming that the court lacked jurisdiction to enter the formal order because defendant had been returned to the jurisdiction. This Court upheld the denial of the remission application, holding that the surety’s obligation under the bail bond matured when the court noted defendant’s absence on the record and directed forfeiture. Thus,
 
 Bennett
 
 is consistent with the rule we set today: that the operative event is the court’s directive that bail be forfeited made in conjunction with a finding that defendant’s absence is “without sufficient excuse.” (CPL 540.10 [1].)
 
 Bennett
 
 did not address when the time period within which the prosecution must file a forfeiture order begins to run since a time requirement was not included in the forfeiture statutory scheme until 1926, more than 30 years after
 
 Bennett.
 

 In addition to determining that neither the statutory language nor our prior cases favor the “operation of law” approach, we conclude such a rule would be unworkable. A bail
 
 *30
 
 bond may not be forfeited unless a defendant fails to appear without sufficient excuse. Although in many cases a court is in a position to determine at the first non-appearance that there is no sufficient excuse for a defendant’s absence and immediately direct bail bond forfeiture, in some instances it may be necessary to conduct an inquiry to determine whether defendant has proffered an excuse for the absence, whether that excuse is authentic and, if so, whether it is legally sufficient. Once that investigation is completed and a court has reached a forfeiture determination, a formal order should be prepared and signed without delay.
 

 In this case, Supreme Court did not make a finding on the record until November 20, 1997 that defendant’s absence on October 14th was without sufficient excuse and, despite the People’s repeated requests for a bail bond forfeiture order, the court did not indicate it would order forfeiture before that date. Accordingly, the 60-day period for the People to file a copy of the bail bond and forfeiture order did not commence until November 20. The January 13, 1998 filing of these documents was timely and the Appellate Division’s vacatur of the stay of enforcement of the forfeiture order was, therefore, proper.
 

 Fidelity asserts that a rule that forfeits a bond by operation of law on the day of defendant’s first non-appearance will promote certainty for sureties and avoid lengthy forfeiture disputes. While we agree that these goals are implicit in the statutory scheme, we disagree that it is necessary to adopt an automatic forfeiture rule to achieve them. We do observe, however, that the five-week delay that occurred between the date of defendant’s initial non-appearance and the court’s forfeiture determination was excessive under the circumstances of this case. It was not an abuse of discretion to allow time for the parties to look into defendant’s absence, but Supreme Court should have ruled on the People’s forfeiture application within a reasonable time when defendant did not appear or communicate with the court, particularly as the court apparently determined that it had sufficient information concerning defendant’s failure to appear to go forward with the trial in defendant’s absence.
 

 Despite the obvious limitations in
 
 Bennett’s
 
 precedential value given the distinctions between the former Code of Criminal Procedure provisions and the modern statutory scheme, one aspect of the holding is viable and worthy of emphasis. In
 
 Bennett,
 
 the issue was whether a court’s directive that bail be forfeited due to a non-appearance was vitiated because defen
 
 *31
 
 dant was returned to the jurisdiction before the court entered a written forfeiture order. The Court answered this question in the negative and this aspect of the holding is not disturbed by our ruling in this case. The purpose of the bail forfeiture process is to ensure that defendants appear at every scheduled court appearance. The damage defendants cause to the administration of justice when they fail to do so is not ameliorated merely because they are later apprehended and brought to court, nor is a surety automatically relieved of its obligation under the bond when a non-appearing defendant is eventually located.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, with costs.